## J. EDWIN MARTINE

*v.*

## THOMAS NELSON.

1. MECHANICS' LIEN—*house-painters.* House-painters are within the protection of the mechanics' lien law, which secures a lien to persons who "furnish labor or materials for erecting or repairing" a building.

2. CONTRACTS—*notice.* Where a mechanic agrees to do a job of work at a stated price, upon the representation of the person for whom the work is to be done as to the amount and character of the work required, and the mechanic, upon seeing what is actually to be done, discovers the job to be of a different and more expensive character than represented, the question would arise whether he should not notify the other party of that fact before proceeding with the labor; but if the mechanic did not personally examine into the character of the work to be done, and sent his men to execute it, he being absent at a distance from the time the agreement was made, the want of such notice would not prejudice his right to recover the actual value of the work done in excess of the price agreed upon.

APPEAL from the Superior Court of Chicago; the Hon. JOSEPH E. GARY, Judge, presiding.

The opinion states the case.

Mr. GEO. L. PADDOCK and Mr. F. B. PEABODY, for the appellant.

Mr. R. W. SMITH and Mr. ROBERT HERVEY, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a proceeding under the lien law, in which the complainant sought to recover the value of certain work performed by him upon a house of the defendant. The defendant answered under oath, which had not been waived by the complainant, averring the work had been done under a special

contract,* and the issue formed was submitted to a jury, who found there was no special contract, and gave a verdict for the value of the complainant's work, so far as it was unpaid.

It is first insisted, by counsel for appellant, that house-painters are not within the protection of the lien law, because, it is said, they do not, in the language of the statute, " furnish labor or materials for erecting or repairing" a building.

This position is entitled to little consideration. The argument is, that the painting of a house is merely its coloring, and not a part of its erection, which, it is said, consists in lifting its walls into the air. But when we consider the object of the law, nothing can be plainer than that the legislature designed, by this act, to cover all labor or materials which the builder may choose to employ in finishing his house. If the builder protects the walls of his house from the action of the elements by covering them with a coat of paint or stucco, is it reasonable to say he has not used these materials in *erecting* his house? The urging of such arguments is labor lost.

It is also urged, that the verdict is not properly supported by the evidence; and this question we have not found it so easy to solve. As the oath to the answer was not waived, its effect, as evidence, so far as it was responsive to the bill, could be overcome, according to the general rule, only by two witnesses, or by one witness and corroborating circumstances. In this case, the complainant and defendant were both sworn, and the testimony of the defendant, so far as it explains the general allegation in the answer, that there was a special contract, in a manner consistent with the complainant's testimony that there was no special contract, must be taken as satisfactory corroboration. The defendant, in his testimony, as well as in his answer, insists there was a special contract that the work was to be done for $350. But when he goes into details, it is, we think, reasonably clear, as the jury found, that this price was fixed under an entire misapprehension created by the defendant, very probably without design on his part, as to the amount of work to be done.

Both parties agree in this, that the complainant had not seen the building; that the defendant brought to complainant's shop some plans and specifications; that the next day he called again; that complainant had not made and did not make anything approaching an accurate calculation of the amount of work to be done, by estimating the number of square feet; that defendant asked complainant to make an offer without going into details, for which there was no time, as complainant was going to New York that afternoon, and that complainant agreed to do the work for $350. Complainant left that day, and was absent several weeks, and his men proceeded at once with the work. To this point there is no essential disagreement. The complainant, however, further testifies, that his offer of $350 was made upon the representations of defendant as to the amount of work to be done, and that it was work thus described which he offered to do for $350. The defendant testifies that the offer was upon the plans as they were laid before the complainant; but he does not deny that he made explanations of them, as he must necessarily have done in such a hasty transaction, and he admits there were some changes increasing the amount of work. The complainant testifies that it was a totally different job, both as to the character and quantity of the work to be done, from the job described by the defendant in their conversation. That the complainant really made his offer of $350 in reference to the explanations given by the defendant of his plans, and upon the faith of his representations, and that in these representations the defendant was himself entirely mistaken, and thus led the complainant into error, is very clear from the fact, appearing abundantly from the testimony of defendant's own witnesses, that the mere material cost nearly or quite the $350, and the value of the labor and materials together was more than $800, and according to some of the testimony over $1,000. The jury found a verdict for $727, the defendant having paid $150.

The verdict of the jury, that there was no special contract, was, then, a reasonable conclusion from all the evidence,

giving, at the same time, its just weight to the sworn answer of the defendant, as that answer is explained by the defendant himself. The minds of the parties never met. The complainant offered to do for $350 certain work which the defendant represented to him he desired to have done. The defendant supposed, we have no doubt, that the offer was to cover all the painting to be done under the plans and specifications, as it clearly would have done if it had been made upon an estimate or calculation based upon these. But it was made largely on the verbal representations of the defendant, and the work done was a very different piece of work from that which the complainant had stated he could do for $350. If the complainant had done the work in person, the question would arise, whether, after seeing the work actually to be done, it would not have been his duty, before proceeding with the labor, to notify the defendant that the work to be done was different from that represented. But, as already stated, it was arranged that his men were to commence work the next day, as they did, and on the same day, the complainant himself went to New York, and was absent three weeks.

Upon all the evidence, the verdict seems to us reasonable and just, and must be allowed to stand.

*Decree affirmed.*