### Henry Harms, Impl'd, etc.

v.

### William Fitzgerald.

Board of county commissioners—Power to settle and adjust claims against the county—Jurisdiction in equity.—The law has confided to the Board of County Commissioners the duty, among others, of constructing a court house, and for that purpose has conferred upon it the power to make contracts for such construction, and of necessity the power to exercise the discretion of settling and adjusting claims against the county arising therefrom, and when in the exercise of such discretion it has settled and compromised a claim about which there was dispute, a court of equity, in the absence of any proof of fraud or corruption on the part of the Board, has no jurisdiction to order an injunction restraining the consummation of its agreement to compromise.

· APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. FORRESTER & BEEM, for appellant; contended that a court of equity has no jurisdiction to interfere by injunction with the action of a Board of County Commissioners in settling a disputed claim against the county where there is no proof of fraud or collusion between the Board and the claimant, and cited Att'y. Gen. v. Aspinwall, 2 Mylne & C. 618; Parr v. Att'y. Gen. 8 Clark & F. 409; Att'y. Gen. v. Role, 4 Mylne & C. 17; Att'y. Gen. v. Luhford, 13 Sim. 547; Att'y. Gen. v. Norwich, 16 Sim. 225; Movers v. Smedley, 6 Johns. Ch. 27; Livingston v. Holbrook, 4 Barb. 14; Meserole v. Mayor and Council, 8 Paige, 198; Gillespie v. Broas, 23 Barb. 370; Andrews v. Board Sup'rs Knox County, 70 Ill. 65.

Where injunctions have been granted to restrain municipal corporations, the objects of their appropriations were beyond their legal authority: Colton v. Hanchett, 13 Ill. 615; Town of Ottawa v. Walker et al. 21 Ill. 610; Mount Carbon Coal, etc. Co. et al. v. Blanchard et al. 54 Ill. 240; Sherlock et al. v. Winetka, 59 Ill. 389; Chestnutwood v. Hood, 68 Ill. 132; Livingston County v. Weider, 64 Ill. 427.

As to power of county board: Dillon on Mun. Cor. § 398; Town of Petersburg v. Mappin, 14 Ill. 193; Constitution Art. X. § 7; Rev. Stat. 306, 307.

Upon the question of changes made from the original plans, and that the changes were so important and extensive as to amount to a rescission of the contract: Chit. on Con. 566; Pepper v. Burland, Peake, 103; Robson v. Hall, N. P. R. 230; Wheeden v. Fisk, 50 N. H. 125; Martine v. Nelson, 51 Ill. 422.

Mr. JOHN M. ROUNTREE, for appellant; against the authority of a court of equity to interefere, cited City of Galena v. Corwith, 48 Ill. 423; Brush v. City of Carbondale, 78 Ill. 74; High on Injunctions, § 403; Conrad v. Trustees of Ithica, 16 N. Y. 168; Storrs v. City of Utica, 17 N. Y. 104.

As to the powers of the Board of Commissioners: Constitu-

Harms v. Fitzgerald.

tion Art. X. § 7; Rev. Stat. 1874, 306, §§ 22, 23, 24, 25; Rev. Stat. 1874, 307, § 26; Rev. Stat. 1874, 308, § 30; Rev. Stat. 1874, 309, §§ 33, 35; Rev. Stat. 1874, 313, § 62; Meech v. City of Buffalo, 20 N. Y. 198; Dillon on Mun. Cor. § 398; Town of Guilford v. Board Sup'rs Chenango county, 13 N. Y. 143; Nelson v. Inhabitants of Mulford, 7 Pick. 18; Town of Petersburg v. Mappin, 14 Ill. 193; Augusta v. Leadbetter, 16 Me. 47; Supervisors v. Birdsall, 4 Wend.

That the decision of the board in settling disputed claims is final and cannot be reviewed: Supervisors v. Bowen, 4 Lansing, 33; Shank v. Shoemaker, 18 N. Y. 489; Russell v. Cook, 3 Hill, 504; Stover v. Mitchell, 45 Ill. 213; County v. Hunt, 5 Ohio St. 488.

Messrs. SCATES & HYNES, for appellee; insisting upon the right of a court of equity to interfere and protect the application of the funds of a municipal corporation, cited Chestnutwood v. Hood et al. 68 Ill. 132; 2 Dillon on Mun. Cor. § 731; Sherlock v. Winnetka, 59 Ill. 389; 12 Am. Law Reg. (N. S.) 150; Parr v. Att'y Gen. 8 Clark & F. 409; Grant on Cor. 138; 2 Spence Eq. 32; Colton v. Hanchett, 13 Ill. 615; Att'y Gen. v. Norwich, 12 Sim. 235.

Against the power of the Board of Commissioners to apply the funds of the county in payment of this claim: Town of Petersburg v. Mappin, 14 Ill. 193; People v. Stout, 23 Barb. 349; Perry v. Kinnear, 42 Ill. 160; 1 Dillon on Mun. Cor. 398.

Upon the question whether the original contract was still in force, and as to what the contract was: Fuller v. Little, 7 N. H. 541; Hill v. Green, 4 Peck, 114; Haywood v. Leonard, 7 Peck, 181; Bailey v. Wood, 17 N. H. 365; Weeden v. Fiske, 50 N. H. 125; De Boon v. Priestly, 1 Cal. 206; Jones v. Woodburg, 11 B. Mon. 167; Robeson v. Godfrey, 1 Holt N. P. 236; Merrill v. Ithica, etc. R. R. Co. 16 Wend. 586; Koon v. Greenman, 7 Wend. 123; McClellan v. Snider, 18 Ill. 588.

That the architect's certificate was conclusive as to the value of the deductions and extras: Korf v. Lull, 70 Ill. 420; Snell et al. v. Brown et al. 71 Ill. 133; McAuley v. Carter, 22 Ill.

53; Canal Trustees v. Lynch, 5 Gilm. 521; 12 Am. Law Reg. 150.

Mr. JOHN WOODBRIDGE, for appellee; that the adoption of the new plans did not abrogate the contract, cited Webster v. French, 11 Ill. 254; People v. Pearson, 1 Scam. 458; People v. Superior Court of New York, 5 Wend. 114; People v. Common Pleas, 18 Wend. 534 *Ex parte* Trapnall, 1 Eng. (Ark.) 9; People v. Contracting Board, 46 Barb. 254.

Against the power of the county board in their discretion to settle the claim of appellant, and that the court has authority to restrain by injunction: Frewin v. Lewis, 4 M. & C. 254; People ex rel. v. Common Council of Chicago, 53 Ill. 424; People v. Allen, 42 N. Y. 404; People v. Contracting Board, 33 N. Y. 382; 2 Dillon on Mun. Cor. 823; Att'y Gen. v. Poole, 4 Mylne & C. 17; Colton v. Hanchett, 13 Ill. 615; Perry v. Kinnear, 42 Ill. 160; Drake v. Phillips, 40 Ill. 388; Sherlock v. Winnetka, 59 Ill. 389; Millan v. Sharp, 15 Barb. 194; Davis v. Mayor, 1 Duer, 453.

That the decisions of the architect are binding: Korf v. Lull, 70 Ill. 420; McAuley v. Carter, 22 Ill. 53; Canal Trustees v. Lynch, 5 Gilm. 521; McAvoy v. Long, 13 Ill. 147; Packard v. Van Schoick, 58 Ill. 79; Mills v. Weeks, 21 Ill. 568; Central Military Tract R'y Co. v. Spurck, 24 Ill. 587; Wallace v. Holmes, 36 Ill. 156; People v. Stout, 23 Barb. 354; Halstead v. The Mayor, 3 Comst. 431; Hodges v. City of Buffalo, 2 Denio, 110; 2 Kent Com. 298.

MURPHY, P. J. On the 28th day of April, 1877, appellee exhibited his bill of complaint on the chancery side of the Circuit Court of Cook county, praying an injunction against the Board of County Commissioners to restrain them from paying appellant $34,609.82, the sum which they propose to pay him as part compensation for the foundations of the Cook county court house. The prayer of the bill was granted, and a perpetual injunction decreed. From this decree, Mr. Harms appealed to this Court, and assigns for error:

First, That the court erred in decreeing that the injunction

Harms v. Fitzgerald.

against him and his co-defendants be made perpetual, and enjoining the payment to Harms of any greater sum than $107,071.03, less $92,692.90.

Second, That the court erred in assuming jurisdiction to settle and adjust the claim of appellant which had been already adjusted and settled by the county board.

Fourth. That the decree of the court is contrary to law and evidence in the case.

It appears that the appellant was a contractor engaged in constructing the foundations for the new court house during the years 1875 and 1876; that he had entered into a contract to that effect in the fall of 1875. After signing the contract, and after he had entered upon the performance thereof, the county made material changes in the plans it had adopted for the construction of the foundations and superstructure of the building. It appears that J. J. Egan was the architect of said building, and that appellant completed the work and extras ordered by the architect as directed. It is also claimed by the answer of appellant that he did not proceed with the work under the contract nor execute the extras under it; but on the contrary that the original contract, plans and specifications, were wholly abandoned and rescinded by consent of the parties to the same; that the county board ordered the architect to prepare entirely new and much more elaborate and costly plans, which were substituted for the original plans, and which were not accompanied by any specifications whatever as to materials or work, but appellant was required by the architect to furnish such materials and do such work as the architect might require and order from time to time; that the new plans were essentially different from the original plans in form and style of work, and were in no sense the same as the old plans with mere changes and additions, but were totally different in all their features and constituted another and different job, and the materials required under the old specifications could not be used in the building according to the new plans; that the architect, with the authority and knowledge of the board, agreed with appellant to pay him a fair and reasonable value for the work, and under this verbal agreement appellant went on and com-

pleted the job under the direction of the architect, and that the work and materials furnished by him were reasonably worth $162,967.89; denies that he ever agreed that .the architect should value and determine the price of the work and materials under the new plans, or that the architect has made a fair and true estimate of the work, or that there is only due the sum of $107,071.03, less $92,692.90 already paid; denies that the amount of $141,689.90 allowed by the board of commissioners, was based upon the original contract, said allowance having been made on the basis of measurement and value of the whole work; and yet upon an erroneous valuation, said board having been misled in rejecting so large an amount of said appellant's claim; that it is impossible to apply the original contract or trace it in the work actually done, being so essentially different in character and details from that required by the original spe-cifications, and finally submits that the county board had the exclusive authority by law to manage and control matters con-nected with the building of said court house, and to audit and settle all claims for work and materials, and denies the juris-diction of the court to revise and correct the action of the board in the premises, or to enjoin it from exercising its legal power and discretion in regard to the same. To this answer appellee filed a general replication.

As will be seen, the issue thus formed, and the fact thus in dispute was, whether the work as actually and finally done was done in pursuance of, and in conformity to, the original con-tract, and whether the compensation therefor was to be ascer-tained and determined by the stipulations of such contract, or whether the alterations and changes so made were such a departure from such contract as to be in substitution therefor. It appears from the estimates of the architect that if the com-pensation for such work was to be determined by the original contract, it would amount to $107,071.03; that after the deduc-tion of the sum of $92,692.90, which had been paid him, there would be still due to the appellant the sum of $14,378.13; that if the basis of computation should be the fair market value of the work ascertained by measurement and valuation, it would be $162,967.89. It appears that appellant presented to the

board his claim for payment for said work at that figure, and that the board took said proposition into consideration, and after mature deliberation voted to award him as full compensation for said work, and in full settlement of his said claim, the sum of $141,689.80; being in excess of the amount fixed by the architect on the basis of the contract of $34,609.82, and $21,278.08 less than the sum claimed by appellant, to restrain the payment of which, less the sum previously paid thereon by said board, the appellee, as resident and tax-payer of the county, filed this bill.

The testimony in the case in support of the respective allegations in the bill and in the answer is in conflict, there being testimony introduced by each side tending to support said allegations respectively; and if the litigation was between the county on the one side and appellant upon the other, it might be a question more or less difficult to determine which way the testimony preponderates; but in the view taken of the case by the Court, it is not material to decide that question, or further to consider the same than to determine that it presents a question involved in uncertainty and doubt as to the facts of the case; and that being the case, we think it presents a question of the jurisdiction of a court of equity, and it is our purpose to rest our decision upon that question. By the Constitution, Art. 10, Sec. 7, it is provided that "the county affairs of Cook county shall be managed by a board of commissioners of fifteen persons, ten of whom shall be elected from the city of Chicago, and five from towns outside of said city, in such manner as may be provided by law."

By an act of the legislature entitled "An Act to revise the Laws in relation to Counties," approved March 31st, 1874, Sec. 22 provides that "each county which has heretofore been, or may hereafter be established in this state, according to the laws thereof, shall be a body politic and corporate, by the name and style of "The County of —— " and by that name may sue and be sued, plead and may be impleaded, defend and be defended against in any Court of Record having jurisdiction of the subject matter, either in law or equity, or other place where justice shall be administered."

By the 23rd Section it is provided that "the powers of the county, as a body corporate or politic, shall be exercised by a County Board, to wit: In counties under township organization (except the county of Cook) by the Board of Supervisors, which shall be composed of the town and such other supervisors as are or may be elected pursuant to law; in the county of Cook by a Board of County Commissioners, pursuant to Section 7, Article 10 of the Constitution; in counties not under township organization, by the Board of County Commissioners."

By Sec. 24 it is provided that "each county shall have power, first, to purchase and hold the real and personal estate necessary for the uses of the county, and to purchase and hold for the benefit of the county, real estate sold by virtue of judicial proceedings in which the county is plaintiff; second, to sell and convey or lease any real or personal estate owned by the county; third, to make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers."

By Sec. 25 it is provided "that the County Boards of the several counties shall have power, first, to take and have the care and custody of all the real and personal estate owned by the county; second, to manage the county funds and county business, except as otherwise specifically provided; third, to examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county."

By Sec. 35 of said act, it is provided that claims against the county shall be audited and paid by the board.

By Sec. 33 of said act, it is provided that "it shall be the duty of the county boards of each of the counties of this State to take and order suitable and proper measures for the prosecuting and defending of all suits to be brought by or against their respective counties, and all suits which it may become necessary to prosecute or defend to enforce the collection of all taxes charged on the State assessment."

By Sec. 62 of said act, it is provided that "the said commissioners shall take the oath of office prescribed by the constitution. They shall have regular meetings on the first Mondays

Harms v. Fitzgerald.

of December, March, June and September of each year. They shall be known as the 'Board of Commissioners of Cook county,' and as such board of commissioners, shall have the management of the county affairs of said county, and shall exercise the same powers, perform the same duties, be subject to the same rules, regulations and penalties as prescribed by law for the board of supervisors."

Thus it will be seen that by the Constitution and laws passed in pursuance thereof, it is provided that the management of the affairs of Cook county is committed to the board of county commissioners. That being the case, it only remains to be determined whether in the performance of that duty by said board, such a state of facts has arisen as authorizes the intervention of a court of equity to control and direct such management. It will not be forgotten that the element of fraud is not involved in the case. The jurisdiction is claimed by appellee (as we understand it) upon the ground that in offering to pay the claim of appellant the board is acting without legal authority; and hence the right of the court to interfere and prevent a diversion of the public revenues to channels unauthorized by law. As will be seen, the management of the interests of the county is by law committed to their judgment and discretion, and in this case this claim was presented against the county, and its justness fully considered by said board, and in the exercise of their judgment they determined to pay, as right and proper, and as due and owing to appellant, the amount in controversy. If they had the legal authority to settle this claim, and had done so, the legality of the transaction cannot be invalidated by a lack of wisdom in the exercise of such power, there being no fraud proven.

At Sec. 389 of "Dillon on Municipal Corporations," the learned author says: "Growing out of its authority to create debts and to incur liabilities, a municipal corporation has power to *settle* disputed claims against it, and the agreement to pay them is not void for want of consideration." In the case of Nelson v. The Inhabitants of Mulford, 7 Pickering, 18, the court hold the same doctrine. In case of The President and Trustees of the Town of Petersburg v. William Mappin et al.

14 Ill. 349, our own Supreme Court, in discussing the powers of municipalities to settle and adjust disputed controversies between itself and other parties, use the following language : "But they may sue and be sued, and take all steps necessary to assert and secure the rights of the corporation. The power to prosecute suits on behalf of the corporation, includes the power to settle the same. So the power to defend suits brought against a corporation gives them the same power of adjustment. They may compromise doubtful controversies, to which the corporation is a party either as plaintiff or defendant. The law vests them with a discretion in such matters which they are to exercise for the best interests of the corporation. A settlement of an existing controversy, if made in good faith, binds the corporation, but if collusively made it is not obligatory." To the same effect is the case of The Town of Guilford v. Board of Supervisors of Chenango county, 13 N. Y. 143. Also Livingstone v. Holbrook, 4 Barber, 14. The fact that this claim was brought before the board and was considered by it as one about which there was dispute and difficulty, and which might breed litigation of doubtful issue to the county, clothed them with the undoubted right to settle it by compromise. In the absence of any proof of fraud, corruption or dishonesty in the exercise of its authority in this respect, a court of equity has no jurisdiction to order an injunction restraining the consummation of its agreement to compromise: Lewis Anderson v. Board of Supervisors of Knox county, 70 Ill. 65; Martin v. Nelson, 51 Ill. 422.

As we have shown, the law has confided to the board of county commissioners the duty of constructing a court house, and for that purpose conferred upon it the power to contract and provide for such construction. Hence, in the necessity of the case, it must be held to confer upon the board the power to exercise the discretion of settling and adjusting claims against the county arising out of such construction; and when in its judgment the interest of the county is promoted thereby, settle and compromise claims, and thus avoid tedious, expensive and uncertain litigation on the part of the county. So in the light of these views, we think that, in the absence of fraud, the board

of county commissioners is the sole judge of the wisdom of compromising this claim; and that, as a consequence, a court of chancery has no jurisdiction, and that in entertaining the bill and decreeing a perpetual injunction upon said board, restraining them from the exercise of an authority and power manifestly conferred upon them by the law, the court erred. For which error the decree is reversed and the bill dismissed.

Decree reversed and bill dismissed.